1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONNA N. BROOKS-HENRIQUEZ,

11            Plaintiff,                    No. CIV S-06-1866 DAD

12       v.

13   MICHAEL J. ASTRUE,                     ORDER
     Commissioner of Social Security,[1]
14
              Defendant.
15   _____/

16            This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for remand and defendant's cross-motion for summary judgment.

18   For the reasons explained below, the court concludes that the decision of the Commissioner of

19   Social Security ("Commissioner") must be affirmed.

20                         **PROCEDURAL BACKGROUND**

21            This action concerns plaintiff Donna Nell Brooks-Henriquez's second application

22   for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act).

23            Plaintiff previously applied for SSI on January 20, 1999, alleging disability since

24   January 15, 1999.  Her application was denied initially and on reconsideration.  At plaintiff's

25   _____

26        [1]  Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit
     pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

                                          1

request, a hearing was held before an administrative law judge ("ALJ") on December 6, 2000, at which time plaintiff was represented.  In a decision issued on April 24, 2001, ALJ L. Kalei Fong determined that plaintiff was not disabled.  The ALJ made the following findings: plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; plaintiff had severe impairments; plaintiff's medically determinable impairments did not meet or medically equal any listed impairment; plaintiff's allegations regarding her limitations were not totally credible; plaintiff had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, to walk and/or stand for six hours, to sit for six hours, to perform postural activities occasionally, except for climbing ropes, ladders and scaffolds, and to perform simple repetitive tasks, i.e., unskilled work, with infrequent direct contact with co-workers and the public; plaintiff's past relevant work as a telephone clerk or telemarketer did not require performance of work-related activities precluded by her residual functional capacity; plaintiff's dysthymia, neck and back pain, and pain disorder did not prevent her from performing past relevant work; plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision.  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 9, 2002.  Plaintiff sought judicial review by filing her complaint in the action entitled <u>Brooks-Henriquez v. Barnhart</u>, Case No. CIV S-02-2317 DAD, on October 22, 2002.  By order filed March 23, 2004, the undersigned denied plaintiff's motion for summary judgment, granted defendant's motion for summary judgment, and affirmed the Commissioner's final decision.[2]

Plaintiff filed a new application for SSI on January 23, 2004, alleging disability since September 15, 1998.  (Tr. at 53-55.)  The Commissioner denied the application initially on March 18, 2004, and upon reconsideration on July 1, 2004.  (Tr. at 38-50.)  Upon plaintiff's request for an administrative hearing, a hearing was held before ALJ Fong on November 9, 2005.

---

[2]  The facts set forth in this paragraph are taken from the court's March 23, 2004 order in Case No. CIV S-02-2317 DAD.

(Tr. at 11, 52, 141-58.)  Plaintiff, represented by non-attorney Danielle Duarte, testified at the

hearing.  (Tr. at 11, 24,141, 143-58.)  In a decision dated March 21, 2006, the ALJ determined

that plaintiff was not disabled.  (Tr. at 8-18.)  The ALJ entered the following findings:

> 1.    The claimant has not engaged in substantial gainful activity
>       at any time relevant to this decision (20 CFR 416.920(b)).
>
> 2.    The claimant has the following severe impairments: degenerative
>       disc disease of the lumbar spine, a thyroid condition, degenerative
>       joint disease of both knees, and myofascial pain syndrome
>       involving the right shoulder and hip (20 CFR 416.920(c)).
>
> 3.    The claimant does not have an impairment or combination of
>       impairments that meets or medically equals one of the listed
>       impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
>       416.920(d), 416.925 and 416.926).
>
> 4.    After careful consideration of the entire record, the
>       undersigned finds that the claimant has the residual
>       functional capacity to lift 10 pounds occasionally and
>       frequently walk/stand two hours, sit six hours, occasionally
>       perform postural activities, occasionally reach overhead,
>       and work in an environment where she is not exposed to
>       extreme cold and heat.  She has no visual or communicative
>       limitations nor any other manipulative or environmental
>       limitations.  She has no mental limitations.  This residual
>       functional capacity is adopted from the prior decision.
>
> 5.    The claimant is capable of performing past relevant work as a
>       telemarketer and sales associate.  This work does not require the
>       performance of work-related activities precluded by the claimant's
>       residual functional capacity (20 CFR 416.965).
>
> 6.    The claimant has not been under a "disability," as defined in the
>       Social Security Act, at any time through the date of this decision
>       (20 CFR 416.920(f)).

(Tr. at 14-17.)

On June 21, 2006, the Appeals Council denied plaintiff's request for review of the

ALJ's decision.  (Tr. at 4-6.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by

filing the complaint in this action on August 21, 2006.

/////

/////

3

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, §§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

/////

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's sole argument in support of remand is that the ALJ completely failed to fulfill his duty to develop the record regarding plaintiff's disability. Plaintiff alleges that neither the Social Security field office nor the ALJ attempted to obtain any of plaintiff's current medical records or the medical records on which the findings of the prior decision were based.[3] Plaintiff argues that the ALJ's failure to develop the record deprived her of a fair and meaningful hearing regarding her disability and that therefore the final decision of the Commissioner should be reversed.

Defendant responds that it is the ALJ's duty to develop the record, not to create one, and that the ALJ in this case fulfilled his duty to fully and fairly develop the record.

---

[3] In her second SSI application, plaintiff alleged a 1998 disability onset date. However, the decision on plaintiff's first SSI application is res judicata on the issue of her disability through March 11, 2003. Plaintiff has not demonstrated that the ALJ had a duty to request the medical records that were relevant to her first SSI application.

The ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See also 20 C.F.R. §§ 416.912(e) & 416.1444. Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). See De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop the record is present even if the claimant is represented by counsel, and the duty is especially important in cases of mental impairments); Brown v. Heckler, 713 F.2d 441, 443 (1983) (where the ALJ feels that more evidence, or more reliable evidence, is necessary, he has a duty to fully and fairly develop the record, even when the claimant is represented by counsel). However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, the medical records included in the administrative transcript consist of only thirty-two pages: disability case activity logs printed March 18, 2004 and July 1, 2004 (tr. at 109-15); an internal medicine consultative evaluation dated March 7, 2004, by Robert Mattos, M.D. (tr. at 116-19); a physical residual functional capacity assessment by an agency physician dated March 16, 2004 (tr. at 120-27); a consultation request dated March 18, 2004 (tr. at 128-30); a consultation request dated June 30, 2004 (tr. at 131); and a comprehensive neurologic evaluation by Ethelynda Jaojoco, M.D. dated December 17, 2005 (tr. at 132-40). No treatment records are included in the administrative record.

The case activity logs demonstrate that requests for medical records were issued to Sacramento County Primary Care and to Kaiser Permanente/Sacramento South on February 10, 2004. (Tr. at 114.) Requests were re-issued to both treating sources on February 24, 2004. (Tr. at 112.) Requests were re-issued to Sacramento County Primary Care on May 20 and on June 22, 2004. (Tr. at 109.) Follow up phone calls were made at intervals. (Tr. at 109, 111-12.) At the

administrative hearing on November 9, 2005, the ALJ questioned plaintiff about medical

treatment she received at County Primary Care, inquired about any consultations with specialists,

and then advised plaintiff and her representative that he was going to order a neurologic

evaluation:

> ALJ:      . . . . I want to check the nerves. What's going on with your legs, your back, your shoulder. All these problems that you are being treated for at Primary Care.
>
> CLMT:    Um-hum.
>
> ALJ:    By a specialist that deals with nerve damage.
>
> CLMT:    Okay.
>
> ALJ:    Okay? See if there is anything from a neurological standpoint that is affecting you. Because at Primary Care it's kind of real basic like just give you medication.
>
> CLMT:    Right.
>
> ALJ:    It's not really specialized in trying to figure out what is wrong I think –
>
> CLMT:    Okay.
>
> ALJ:    – it seems like. And if you can get me copies of her Primary Care records?
>
> ATTY:    Sure.
>
> ALJ:    Because that would give me a longitudinal view –
>
> ATTY:    Um-hum.
>
> ALJ:    – of what kind of treatment even if it's standard medication refill. It gives me an idea of treatment. I know you're not going often[,] it's when they can schedule you, but at least it'll help me understand a little more. And with those records I want to send to the neurologist too just so he or she can get a better picture of the kind of treatment you've been receiving. And then I'll keep the record open until I can get these documents back and I can review because you have hardly any records really other than Primary Care and I want to get those records. Okay. Anything further, Ms. Duarte?
>
> ATTY:    No, Your Honor.

| | |
|---|---|
| 1 | ALJ:  Okay.  So we'll keep the record open.  I want to give you the benefit of the doubt.  You came to see me before, but you didn't have any records at that time too or very little and so I want to develop the case a bit more because it's an ongoing problem for you and if what you tell me is true that you stay at home most of the time and have all these pains I want to find out what's going on. |
| 2 | |
| 3 | |
| 4 | |
| 5 | CLMT:  I do, too. |
| 6 | (Tr. at 155-57.) |

<span>7</span> Despite the assurance of plaintiff's representative that copies of the Primary Care

<span>8</span> records would be provided, plaintiff failed to provide any treatment records.  The ALJ ordered a

<span>9</span> neurological evaluation, and plaintiff was examined by Dr. Jaojoco on December 17, 2005.  (Tr.

<span>10</span> at 132.)  On January 9, the ALJ forwarded a copy of Dr. Jaojoco's evaluation to Richard Shore,

<span>11</span> plaintiff's attorney, and advised counsel that he could submit "any additional records . . .

<span>12</span> (including a report from the treating physician)."  (Tr. at 108.)  Again, no treatment records or

<span>13</span> reports were submitted.

<span>14</span> Plaintiff interprets the ALJ's statements at the administrative hearing as a finding

<span>15</span> that the record was incomplete, and, on that basis, plaintiff argues that the ALJ had a duty to

<span>16</span> secure past and current medical records before reaching a decision.  While it is true that the ALJ

<span>17</span> indicated his desire "to develop the case a bit more," the undersigned finds that the ALJ wanted

<span>18</span> to develop the case record by obtaining a neurological evaluation.  The ALJ stated that he wanted

<span>19</span> to find out "[w]hat's going on" with plaintiff's legs, back, and shoulder, i.e., the problems for

<span>20</span> which she was being treated at Primary Care, and that he intended to develop the case by

<span>21</span> ordering an evaluation by "a specialist that deals with nerve damage."  (Tr. at 156.)  The ALJ

<span>22</span> believed that the Primary Care records would be "real basic," reflecting routine prescription of

<span>23</span> medicines rather than containing specialized diagnostic efforts.  (Id.)  The ALJ wanted the

<span>24</span> treatment records for a "longitudinal view" of plaintiff's treatment, even if consisted of little

<span>25</span> more than "standard medication refill," because the information might help him "understand a

<span>26</span> little more" and give the specialist "a better picture of the kind of treatment [plaintiff had] been

8

receiving." (Tr. at 157.)

The undersigned does not view the ALJ's observation about developing the record as anything other than a reference to his decision to order a neurological evaluation of plaintiff by a specialist. Plaintiff's assertion that the ALJ's observation triggered an obligation to secure additional medical records that had been requested repeatedly by the ALJ, and which plaintiff's representative had agreed to but failed to provide, is unpersuasive. In the absence of ambiguous evidence or a record inadequate to allow for proper evaluation of the evidence, the ALJ in this case was not required to develop the record further. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence or the ALJ's own finding that the record is inadequate to allow proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that the ALJ satisfied his duty by keeping the record open so that it could be supplemented by the physician's response to further inquiry into the basis for his opinion).

## CONCLUSION

The undersigned finds that the evidence of record, after the consultative opinion was obtained, was sufficient to support the ALJ's findings and that there was no need to further develop the record. See Mayes, 276 F.3d at 459-60. Plaintiff has not demonstrated that she was denied a fair and meaningful hearing in the absence of any treatment records.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's March 23, 2007 motion for remand (Doc. No. 17) is denied;

2. Defendant's cross-motion for summary judgment (Doc. No. 19) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: April 4, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/brooks-henriquez1866.order

9